James Elston Tate, pro se.

Larry Derryberry, Atty. Gen., Oklahoma City, Okl., for respondent.

**James Elston TATE 82390, Petitioner,**

v.

**Park J. ANDERSON, Warden, Oklahoma State Penitentiary, Respondent.**

**Civ. No. 73–215.**

United States District Court,
E. D. Oklahoma,
Civil Division.

Jan. 7, 1974.

### ORDER

DAUGHERTY, Chief Judge.

This cause is before the Court on the application of the petitioner for a writ of habeas corpus. The petitioner, a prisoner in the Oklahoma State Penitentiary at McAlester, Oklahoma, in this district, challenges the validity of his incarceration because of improper parole revocation.

The petitioner was remanded to the Department of Corrections on the 29th day of July, 1971, because of a judgment and sentence of four years. On the 14th day of November, 1972, the Governor of the State of Oklahoma issued a Certificate of Parole to the petitioner and he was transferred to the Oklahoma Half-Way House Program on that date or a

few days later. On the 18th day of December, 1972, the petitioner left the Half-Way House without notice. He made no reports and did not comply with the provisions of his parole. A warrant was issued on the 9th day of March, 1973, by the Deputy Director of the Division of Probation and Parole alleging that the petitioner was a parole violator. The petitioner was arrested in Amarillo, Texas, for investigation of the possession of marijuana and a hold order was placed by the Department of Corrections. The petitioner was removed from Texas to the Oklahoma State Penitentiary on May 8, 1973. On the 6th day of June, 1973, the petitioner received, in writing, acknowledged by the petitioner's signature, a notice stating the reason for request of revocation of parole and that a preliminary hearing would be conducted on the 13th day of June, 1973. On the 13th day of June, 1973, a preliminary investigation was held by one W. W. Young, a member of the Division of Probation and Parole but not the parole officer of the petitioner, and a written report was made. On the 24th day of June, 1973, an executive hearing was held where the petitioner took issue with his return from the state of Texas and refused to answer questions and presented no witnesses. On or about June 1, 1973, the petitioner filed an application for writ of habeas corpus asking the Oklahoma Court of Criminal Appeals to assume original jurisdiction and stay these hearings. Said Court, on July 10, 1973, rendered an order overruling the stay of execution and on August 23, 1973, it declined original jurisdiction stating that the parole revocation had been handled in a proper manner. State remedies have thus been exhausted.

The minimum requirements for revoking parole are: (a) Written notice of claim of parole violation, (b) disclosure of the evidence against the parolee, (c) opportunity to be heard in person and present witnesses and documentary evidence, (d) the right to cross-examine adverse witnesses, (e) a neutral and detached hearing body, and (f) a written statement by fact finders as to the evidence relied upon for revoking parole. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484. In the case before the Court, the petitioner was advised, in writing, of the charges against him. A preliminary hearing was held at which the petitioner was present and presented no evidence, and an executive hearing by a member of the Governor's staff was held and the petitioner was present and the findings were that he left the state without permission and did not report to his parole officer, which were in violation of the provisions of parole.

The adequacy of the preliminary hearing and the final revocation hearing is not challenged. It is the petitioner's sole contention that the very fact that he was recommitted to the Oklahoma State Penitentiary 36 days prior to his preliminary hearing renders his present detention unlawful and entitles him to immediate release. Since the petitioner has already been afforded the necessary hearings the posture of this case is significantly different from that of the petitioners in Morrissey v. Brewer, *supra*. There in its brief in the Supreme Court the State for the first time asserted that the petitioners were in fact granted hearings after they were returned to the penitentiary. Since there was nothing in the record to substantiate these allegations, the court treated only with the facts developed before the District Court and Court of Appeals that there had been no hearing, but indicated that if the facts were otherwise a different result would have obtained. See 408 U.S. at 476–477, 92 S.Ct. 2593. Actually, the ultimate order of the court was to return the case to the District Court with directions to make findings of fact on the procedures followed by the Parole Board. 408 U.S. at 490, 92 S.Ct. 2593. The Supreme Court further noted on the question of timeliness of the revocation hearing:

"The revocation hearing must be tendered within a reasonable time after

the parolee is taken into custody. A lapse of two months, as the State suggests occurs in some cases, would not appear to be unreasonable." 408 U.S. at 488, 92 S.Ct. at 2603.

Accordingly, we conclude that, whatever the status of the detention of the petitioner might have been prior to the time that his revocation hearings were held, since constitutionally valid hearings have now admittedly been conducted he cannot complain of his present detention. Moreover, the hearings were had within a reasonable time after petitioner was taken into custody. The petition for writ of habeas corpus therefore will be denied.

It is so ordered.